IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALONZO PRATT, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | )    Case No. 3:21-CV-1262-MAB |
| NICHOLAS BEBOUT, | ) |
| LANCE KORANDO, and | ) |
| DR. MOHAMMED SIDDIQUI, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motions for summary judgment on the issue of exhaustion filed by Defendants Nicholas Bebout, Lance Korando, and Dr. Mohammed Siddiqui (Docs. 39, 42; *see also* Docs. 40, 43). For the reasons set forth below, Defendants Bebout and Korando's motion for summary judgment on the issue of exhaustion is GRANTED (Docs. 39); and Dr. Siddiqui's motion for summary judgment on the issue of exhaustion as to Counts 3 and 4 is GRANTED (Doc. 42). Additionally, as explained further below, the Court **DEFERS RULING** as to Count 2.

### BACKGROUND

Plaintiff Alonzo Pratt filed the instant lawsuit pursuant to 42 U.S.C. § 1983 alleging deprivations of his constitutional rights while incarcerated at Menard Correctional Center (*see* Doc. 11). Plaintiff's complaint alleges that he asked Bebout and Korando to move him to a different cell because his cellmate was fighting with him (*Id.* at p. 24). Plaintiff states that on October 25, 2019, Korando witnessed Plaintiff's cellmate hit him

and knock him over a box (*Id.*). Plaintiff claims Korando then wrote a disciplinary report that stated Plaintiff appeared intoxicated and fell over a box (*Id.*).[1] According to Plaintiff, Korando fabricated this story to cover up for Plaintiff's cellmate and for his own failure to move Plaintiff (*Id.*).

On that same day, Plaintiff met with a nurse in Menard's Health Care Unit (HCU), who approved his segregation placement and gave him an ice pack for his eye but did not take any action regarding his shoulder injury (*Id.* at p. 25). Plaintiff alleges Dr. Siddiqui failed to call him to sick call for an extended period of time. Plaintiff claims that he was called to the Health Care Unit for evaluation and x-rays only after filing an emergency grievance (*Id.*). X-rays of Plaintiff's shoulder revealed a fracture of the right humeral head with dislocation of the right shoulder (*Id.* at p. 26).

An orthopedic surgeon at Carbondale Memorial Hospital performed emergency surgery on Plaintiff's shoulder on November 12, 2019 (*Id.* at pp. 28-29). Plaintiff's shoulder dislocated again three days later (*Id.*). A second shoulder surgery was performed by another orthopedic surgeon on May 22, 2020 (*Id.* at pp. 29-30). Plaintiff's surgeon imposed a plan of care that included physical and occupational therapy, an EMG/NCS, and a four-week follow up visit (*Id.* at p. 44; *see also* Doc. 18, pp. 2-3). Plaintiff further alleges Dr. Siddiqui failed to implement these follow-up procedures and failed to have the hardware removed from his shoulder six months later (Doc. 18 at p. 3). A third surgery on Plaintiff's shoulder occurred on March 16, 2021 (*Id.*). Following this surgery,

---

[1] A copy of this disciplinary report can be found at Doc. 11, p. 36. The report was prepared by Defendant Korando (*Id.*). Ultimately, the Adjustment Committee found Plaintiff guilty of possessing drugs and drug paraphernalia (homemade intoxicants) (*Id.* at p. 21).

Plaintiff claims he cannot use his hand, is in constant pain, and has no working nerves in his hand, wrist, and forearm (Doc. 11 at p. 31).

Plaintiff initially filed his complaint with this Court on October 14, 2021 (Doc. 1). However, due to deficiencies in his original complaint it was stricken, and Plaintiff filed the operative complaint on October 28, 2021 (Doc. 11). Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claims[2]:

Count 1:    Eighth Amendment claim against [Bebout] and Korando for failing to protect Plaintiff from an assault by his cellmate that occurred on October 25, 2019.

Count 2:    Eighth Amendment claim against Jane Doe, John Does 1-3, Dr. Siddiqui, and Wexford Health Services, Inc. for exhibiting deliberate indifference to Plaintiff's serious medical needs as it related to injuries he suffered on October 25, 2019 that went untreated until November 12, 2019.

Count 3:    Eighth Amendment claim against Dr. Siddiqui and Wexford Health Services, Inc. for exhibiting deliberate indifference to Plaintiff's serious medical needs regarding complications from the shoulder injury/shoulder surgery and/or denying postoperative care recommended by the surgeon after the surgery on November 12, 2019.

Count 4:    Eighth Amendment claim against Dr. Siddiqui and Wexford Health Services, Inc. for exhibiting deliberate indifference to Plaintiff's serious medical needs by denying postoperative care recommended by the surgeon after the surgery on May 22, 2020.

(Doc. 18 at pp. 3-4, 6).

---

[2] Pursuant to the threshold review Order, Plaintiff's fifth, sixth, and seventh counts were dismissed without prejudice for their failure to state a claim (*see* Doc. 18 at p. 5-6). Additionally, Wexford Health Services, Inc., along with Carbondale Memorial Hospital and SSM Health Saint Louis University Hospital, were dismissed because the doctrine of *respondeat superior* does not apply in § 1983 actions (*Id.* at p. 4).

Bebout and Korando filed a motion for summary judgment on the issue of exhaustion on September 27, 2023 (Docs. 39, 40). Dr. Siddiqui filed a separate motion for summary judgment on the issue of exhaustion as to Counts 3 and 4 one day later (Docs. 42, 43). Following these motions, the Court dismissed the Jane Doe and John Doe defendants from this action based upon Plaintiff's failure to file an amended complaint identifying additional defendants (Doc. 45). Plaintiff did not file a response in opposition to either motion for summary judgment.

## LEGAL STANDARD

### I. Summary Judgment Standards

Summary judgment is appropriate if the movant shows there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). In other words, courts cannot resolve factual disputes in favor of the party seeking summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

In this case, Plaintiff failed to respond to either of Defendants' summary judgment motions as mandated by Southern District of Illinois Local Rule 56.1(g). Pursuant to Local

Rule 56.1(g), "[a]ll material facts set forth in a Statement of Material Facts or a Statement of Additional Material Facts shall be deemed admitted for purposes of summary judgment unless specifically disputed." Accordingly, because Plaintiff has failed to respond, "we depart from our usual deference towards the non-moving party, [Plaintiff], and accept all of [Defendants'] unopposed material facts as true." *Apex Digital*, 735 F.3d at 965. Nevertheless, the Court is cognizant that "a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, of course, automatically result in judgment for the movant. [The movant] must still demonstrate that it is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (internal quotation marks and citations omitted).

## II.  *Exhaustion Requirements*

Pursuant to the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner has failed to abide by the procedures for pursuing relief. *Id.* In other words, to properly exhaust his or her administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The

Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018); *see, e.g.*, *Ramirez v. Young*, 906 F.3d 530, 537 (7th Cir. 2018) (grievance procedure was unavailable where prisoner was not notified of their existence because of his lack of English proficiency). Additionally, failure to exhaust is an affirmative defense that the defendants carry the burden of proving.[3] *Ramirez*, 906 F.3d at 533. "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 534.

### III.    IDOC Grievance Procedures

Individuals incarcerated within the Illinois Department of Corrections (IDOC) are required to follow the grievance process outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq.* (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor responds, an inmate may submit his grievance to a grievance officer, who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the

---

[3] In most instances, when considering a motion for summary judgment based upon a prisoner's alleged failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). But when there are no material factual disputes, an evidentiary hearing is not necessary. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only a legal question"). Here, having considered both the documentary evidence and Plaintiff's admissions pursuant to Local Rule 56.1(g), there are no material issues of fact that require a hearing to resolve. *See Robinson v. Budde*, No. 18-CV-6998, 2021 WL 1722857, at *4 (N.D. Ill. Apr. 30, 2021) ("Since the parties agree on the facts, there is no need for a hearing.").

grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he has 30 days from the date of the warden's decision to appeal to the Administrative Review Board (ARB). *Id.* at § 504.850(a). The ARB then submits a written report to the Director of the IDOC, who then makes a final decision on the grievance within six months, when reasonably feasible. *Id.* at § 504.850(e).

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). Conversely, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b).

## Discussion

### I.    *Plaintiff's Grievances*

Plaintiff and Defendants have provided numerous grievance records to the Court (*see generally* Docs. 11; 40-1; 40-3; 40-4; 43-1; 43-2; 43-3). The Court has reviewed the grievances and associated records and has focused its analysis on grievances filed around the timeframe alleged in Plaintiff's complaint.[4]

---

[4] Plaintiff and Defendants provided several grievances that were submitted either before or after the time period in question. However, due to both their timing and the nature of the issues being grieved, none of them pertain to Plaintiff's claims in this matter. Accordingly, having thoroughly reviewed the entire evidentiary record submitted by both Plaintiff and Defendants, the Court has limited its discussion of Plaintiff's grievances to only those that could conceivably be related to the attack or Plaintiff's shoulder

**A. Emergency Grievance #187-11-19, dated 11/15/19 and received 11/18/19 (Doc. 40-4)**

Plaintiff filed an emergency grievance on 11/15/2019 (Doc. 40-4). In this emergency grievance, filed three days after Plaintiff's first shoulder surgery, Plaintiff summarized his grievance by stating, "On 10/25/19, I was attack east house [sic] by inmate Larry Pouch with legal box. Hit in head and arm 4 or 5 times. I was not seen by a doctor until 17 days later. Arm broken in two places and shoulder dislocated. Inmate put finger in my ass butt. PREA." (Doc. 40-4; *see also* Doc. 11, pp. 37-38). In the relief requested section, Plaintiff stated, "I want inmate arrested for attacking me with weapon. Sex attack – put finger in my butt." (Doc. 40-4).

Plaintiff also attached this grievance to his complaint (Doc. 11 at pp. 37-38). Notably, in the version attached by Plaintiff (which contains some copying issues and is less legible), Plaintiff included a second page that stated, "I told C/O same day I was raped by cellie Larry. C/O said I should not have been drink wine, I only saw you fall over legal box. You are going to see I told other C/O too. They laugh at me too." (Doc. 11 at p. 38).

The grievance officer reviewed Plaintiff's emergency grievance on November 20, 2019 (Doc. 43-2, p. 120). The grievance officer's report states that Plaintiff's grievance was determined to be an emergency by the warden based upon his PREA allegations and was reviewed by a Facility PREA Coordinator and referred to Internal Affairs (*Id.*). The report further notes that Plaintiff was issued a disciplinary report for being intoxicated on the

---

injury and subsequent treatment.

day of the alleged assault and was seen by a nurse in the HCU on October 25, 2019 (*Id.*). The grievance officer recommended denying Plaintiff's grievance as moot because internal affairs had already interviewed Plaintiff and he admitted no PREA violation occurred during that interview (*Id.*). The grievance officer then stated, "Offender seen by HCU on date of alleged attack. No shoulder pain complaints, given meds and ice pack." (*Id.*). The warden concurred in the grievance officer's findings and recommendations on December 3, 2019 (*Id.*).

Plaintiff submitted a copy of his grievance to the ARB, who received it on December 2, 2019 (Doc. 43-1, p. 22).[5] Two days later, the ARB returned Plaintiff's grievance because he failed to include a copy of the responses from his counselor, grievance officer, and warden (*Id.*; *see also* Doc. 43-1, p. 25).

## B. Grievance #188-11-19, dated 11/17/19 and received 11/19/19 (Doc. 43-2, p. 11)

Plaintiff filed another grievance on 11/17/19 (Doc. 43-2, p. 11). In this grievance, Plaintiff stated, "I was attacked by inmate with legal box. Larry Pouch hit on head back broke arm. Inmate put finger in my butt ass. I was walked out on cell first, Larry Pouch last. He stole gym shoe, size 13, 12 noodles, 3 bags of chip, 1 and ½ bags of chips, extension cord cable cord extension for ear buds, and ear buds, coffee bag, mirror." (*Id.*). In the relief requested section, Plaintiff stated he would like the return of all items right away. (*Id.*). Plaintiff's counselor conducted an inquiry into the whereabouts of Plaintiff's property and noted that Plaintiff's PREA complaint was already addressed. (*Id.*)

---

[5] The grievance received by the ARB can be found at Doc. 43-1, pp. 24-29. Notably, this copy does not include any response from Plaintiff's counselor or the warden (*Id.* at p. 24).

**C. Grievance #193-11-19, dated 11/17/19 and received 11/19/19 (Doc. 43-2, p. 13)**

Plaintiff filed this grievance on 11/17/19 to request that money which was withdrawn from his account to issue a check be returned because the check had not been cashed (Doc. 43-2, p. 13). Plaintiff's counselor responded that counselors have no control over his financial matters and his grievance was forwarded to trust fund officers (*Id.*). As this grievance does not involve any of Plaintiff's claims in this action, no further discussion is warranted.

**D. Grievance #17-12-19, dated 12/1/19 and received 12/2/19 (Doc. 43-2, pp. 97-99)**

Plaintiff submitted this grievance on 12/1/19 (Doc. 43-2, pp. 97-99). In this grievance, Plaintiff stated, "I have not seen doctor in a year. Need to see doctor ASAP – medical treatment. My person property razor was steal – three head razor." (*Id.* at p. 97). Plaintiff requested Menard pay for three new razor heads and also allow him to talk to a doctor as soon as possible (*Id.*). Plaintiff's counselor apparently forwarded this grievance to the HCU, because a response from Angela Crain, RN, and Dr. Siddiqui, was attached (*Id.* at p. 99). In the response, Ms. Crain states Plaintiff arrived at Menard on 2/1/19, and has seen a doctor or the nurse on 4/8/19 and 8/26/19 (*Id.*).

**E. Grievance #198-12-19, dated 12/17/19 and received 12/19/19 (Doc. 43-2, pp. 100-02)**

In this grievance, filed 12/17/19, Plaintiff stated, "I been in Menard send Feb. 4, 19. I asked to talk to or see doctor about my broken arm 10 times or more. Why can I not see doctor. I need to see Doctor. Now pain 24/7." (Doc. 43-2, p. 100). Plaintiff's counselor again forwarded the grievance to the HCU, which responded that Plaintiff was seen on 10/25/19 for contusions and segregation placement, and again on 11/12/19 for his right

arm injury (*Id.* at p. 102). The response then stated, "Dr. Siddiqui notified of x-ray results, sent to Carbondale ER via state car, shift commander notified, apply sling to right arm." (*Id.*).

**F. Grievance #196-12-19, dated 12/17/19 and received 12/19/19 (Doc. 43-2, pp. 116-18).**

Plaintiff submitted a second grievance on 12/17/19 (Doc. 43-2 at p. 118). In this grievance, Plaintiff alleged he was being denied appropriate gym and outside time (*Id.*). He then requested seven hours a week of gym time (*Id.*). A grievance officer denied the request and noted that Plaintiff is being restricted per his physician's order (*Id.* at p. 116).

**G. Grievance #190-1-20, dated 1/13/20 and received 1/15/20 (Doc. 43-2, pp. 91-93).**

This grievance, filed 1/13/20 is a request by Plaintiff to receive his x-ray records (Doc. 43-2, p. 91). This grievance was also forwarded to the HCU, which responded that Plaintiff received the requested records on 1/2/20 (*Id.* at p. 93).

**H. Grievance #342-1-20, dated 1/25/20 and received 1/29/20 (Doc. 43-2, pp. 103-05).**

In this grievance, Plaintiff stated he needed eye drops and was having trouble seeing. Plaintiff's counselor responded by forwarding his complaint to the HCU (Doc. 43-2, p. 103). The HCU responded that Plaintiff has a valid order for eye drops but failed to submit a written refill request to the pharmacy (*Id.* at p. 105).

II.     *Analysis of Defendants Bebout and Korando's Motion (Docs. 39, 40)*

Bebout and Korando argue they are entitled to summary judgment on the issue of exhaustion because Plaintiff's grievances do not discuss his claims against them and because Plaintiff failed to properly exhaust his administrative remedies by following the proper grievance procedure (Doc. 40, pp. 5-7). For the reasons discussed below, the Court

agrees and GRANTS Bebout and Korando's motion for summary judgment as to the issue of exhaustion of administrative remedies (Doc. 39).

Plaintiff's sole claim against Bebout and Korando is that they failed to protect him from being assaulted by his cellmate prior to the alleged attack on October 25, 2019 (Doc. 18, p. 3). Consequently, out of all the grievances discussed above, the only potentially relevant grievance is emergency grievance #187-11-19, dated 11/15/19 and received 11/18/19 (Doc. 40-4; Doc. 11 at pp. 37-38).[6] Having reviewed the grievance and all associated filings, the Court finds Plaintiff did not exhaust his administrative remedies as it relates to his claim against Bebout and Korando.

For one, Plaintiff failed to exhaust his administrative remedies as it relates to emergency grievance #187-11-19 because he did not properly file this grievance with the ARB. As was demonstrated by the ARB's records related to this grievance, Plaintiff failed to include a copy of the responses from his counselor, grievance officer, and warden (Doc. 43-1, p. 22). Illinois Administrative Code § 504.850(a) states that "[c]opies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached" to an inmate's appeal to the ARB. Here, Plaintiff failed to do so and therefore, his grievance was not properly placed before the ARB. Moreover, the improper timing of Plaintiff's appeal to the ARB further demonstrates that he did not properly exhaust his administrative remedies. Specifically, the warden concurred in the grievance officer's

---

[6] Defendants did not include the second, hand-written page of this grievance, in which Plaintiff discusses being laughed at by correctional officers (Doc. 11 at p. 38). However, Plaintiff did submit this second page as an attachment to his Complaint (*Id.*). At this stage of the proceedings, the Court will consider the grievance in its entirety and thus will consider the writings on the second page as well.

findings on December 3, 2019 (Doc. 43-2 at p. 120). Yet, the ARB received Plaintiff's grievance one day prior, on December 2, 2019. (Doc. 43-1 at p. 22). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo*, 286 F.3d at 1024.

Furthermore, even if Plaintiff had properly exhausted emergency grievance #187-11-19 as it relates to procedural requirements for filing and appealing a grievance, that grievance only discussed Bebout and Korando's failure to protect him during and after the attack—not before. For example, Plaintiff's grievance discusses how a correctional officer told him he shouldn't have drunk wine and that he witnessed Plaintiff fall over the legal box (Doc. 11 at p. 38). This implies the attack and resulting injury occurred prior to Plaintiff's conversation with the correctional officer. As such, Plaintiff's grievance would not have alerted IDOC officials that his primary complaint against both correctional officers was that they failed to protect him *before* the attack occurred.[7]

A grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Here, nothing in this grievance alerted the IDOC to his complaint that Bebout and Korando knew of the threat and failed to protect him from that threat before it materialized. *See Phelps v. Neal*, No. 3:19-CV-643-RLM-MGG, 2020 WL 4284798, at *2 (N.D. Ind. July 27, 2020) (granting summary judgment based upon a failure to exhaust because the inmate's grievance did not alert prison officials to his actual complaint against the defendant).

---

[7] Similarly, the relief Plaintiff requested in this grievance only asked for his cellmate to be arrested for attacking him and sexually assaulting him (Doc. 40-4).

For these reasons, Bebout and Korando's motion for summary judgment based upon Plaintiff's failure to exhaust administrative remedies is GRANTED (Doc. 39).

III.     *Analysis of Dr. Siddiqui's Motion (Docs. 42, 43)*

Dr. Siddiqui argues he is entitled to summary judgment on the issue of exhaustion as to Counts 3 and 4 because Plaintiff did not properly exhaust any of his grievances and failed to sufficiently describe the issues he now complains of in any of his grievances (Doc. 43 at pp. 7-9). For the reasons discussed below, the Court agrees and GRANTS Dr. Siddiqui's motion (Doc. 42).

Count 3 alleges that Dr. Siddiqui exhibited deliberate indifference to Plaintiff's serious medical needs by disregarding complications following his November 12, 2019, shoulder surgery and/or denying postoperative care (Doc. 18 at p. 3). Likewise, Count 4 alleges Dr. Siddiqui exhibited deliberate indifference to Plaintiff's serious medical needs by denying postoperative care following his May 22, 2020, shoulder surgery.

Having previously determined that Plaintiff did not exhaust emergency grievance #187-11-19, the question becomes whether Plaintiff submitted and exhausted any other grievances on these issues. Notably, grievances #17-12-19 and #198-12-19 discuss medical care. In grievance #17-12-19, Plaintiff grieved that he had not seen a doctor for over a year (Doc. 43-2 at p. 97). Likewise, in grievance #198-12-19, Plaintiff grieved that he asked for a doctor on multiple occasions regarding his arm injury (*Id.* at p. 100).

Crucially, however, Plaintiff did not exhaust either grievance. Dr. Siddiqui submitted an affidavit from Clayton Stephenson, the Custodian of Records at the ARB, which included the ARB's records related to Plaintiff in the pertinent timeframe (*see*

*generally* Doc. 43-1). As demonstrated by both the ARB's inmate grievance log and the entirety of the attached record, Plaintiff never properly appealed either grievance to the ARB (*Id.*). Therefore, because neither grievance was appealed to the ARB, Plaintiff failed to exhaust his administrative remedies as to either of these grievances (*see* Doc. 43-1).

Additionally, even if Plaintiff had followed the proper administrative review process for either of these grievances, the Court does not believe either grievance would have alerted IDOC officials to Plaintiff's concerns regarding a lack of postoperative care. *See Strong*, 297 F.3d at 650. In fact, while these grievances discuss Plaintiff's need to see a doctor, they both attempt to raise the fictitious claim that Plaintiff had not been seen by a doctor during his time at Menard. Consequently, if Plaintiff's fabricated claims were to be believed, there would be no way for IDOC officials to realize that Plaintiff's actual complaint was about a lack postoperative care following his November 2019 and May 2020 surgeries, because Plaintiff failed to acknowledge the surgeries and other care he did receive (*see* Doc. 43-2 at pp. 97 & 100). In other words, neither grievance expresses nor alludes to any claim that Dr. Siddiqui was ignoring Plaintiff's postoperative needs. *See Ross v. Lamb*, No. 19-CV-577-DWD, 2021 WL 4820369, at *3 (S.D. Ill. Oct. 15, 2021) (A grievance that primarily discussed a disciplinary ticket was "insufficient to alert prison officials that he was grieving the failure to protect him from a dangerous situation or the failure to get him adequate medical care in its aftermath.").

IV.    *Count 2 and Rule 56(f)*

Having determined that Plaintiff failed to exhaust his administrative remedies as to emergency grievance #187-11-19 and grievances #17-12-19 and #198-12-19, the Court

has independently considered whether Count 2 may proceed against Dr. Siddiqui. Specifically, Count 2 is an Eighth Amendment claim against Dr. Siddiqui for exhibiting deliberate indifference to Plaintiff's serious medical needs from October 25, 2019, to November 12, 2019 (*see* Doc. 18, p. 3). The Court is not sure why Dr. Siddiqui did not move for summary judgment on this count. However, the Court suspects this was an oversight on his part. Nonetheless, as discussed below, the Court believes summary judgment on this count is appropriate pursuant to Rule 56(f).[8]

Significantly, Dr. Siddiqui's motion argues that Plaintiff failed to properly exhaust *any* of his grievances from the relevant timeframe (*see generally* Doc. 43). In fact, Dr. Siddiqui's motion explicitly states, "Plaintiff did not timely and properly exhaust any grievance against Defendants for events alleged in his Complaint." (*Id.* at p. 3). Having determined that none of the above-mentioned grievances related to medical care for Plaintiff's shoulder/arm injury were procedurally exhausted, the Court independently considered whether any other grievance (exhausted or not) adequately raised the issue of Dr. Siddiqui's failure to provide medical care for the time period between October 25 and November 12, 2019. Simply put, an extensive review of the record has not demonstrated any such grievance. Consequently, the Court does not believe Plaintiff adequately exhausted his administrative remedies as it relates to Count 2.

Pursuant to Rule 56(f), the Court gives Plaintiff notice of its intent to grant summary judgment in Dr. Siddiqui's favor on this count. *See Brady v. Wexford Health*

---

[8] Under Federal Rule of Civil Procedure 56(f), the Court may grant summary judgment independent of a motion provided the parties are given notice and a reasonable time to respond. Fed. R. Civ. P. 56(f).

*Sources, Inc.*, No. 3:17-CV-883-MAB, 2021 WL 4262430, at *18 (S.D. Ill. Sept. 20, 2021) (giving the plaintiff notice that the Court intended to grant summary judgment in the defendant's favor pursuant to Rule 56(f) based upon the record before the Court). Plaintiff will be given an opportunity to respond and explain to the Court why he believes summary judgment is not appropriate.

CONCLUSION

The motion for summary judgment on the issue of exhaustion filed by Defendants Bebout and Korando is **GRANTED** (Docs. 39, 40). Judgment will be entered in their favor at the conclusion of this case. Additionally, the motion for summary judgment on the issues of exhaustion as to Counts 3 and 4 filed by Dr. Siddiqui is **GRANTED** (Docs. 42, 43). The Court **DEFERS RULING** as to Count 2. The Court finds that based on the record as it currently stands, Dr. Siddiqui is entitled to summary judgment on Count 2. However, Plaintiff shall have an opportunity to respond. Such response is due within 30 days—on or before **April 8, 2024**—and must explain why summary judgment should not be awarded to Dr. Siddiqui on Count 2 and present competent evidence in support of Plaintiff's argument that demonstrates a genuine issue of material fact. Dr. Siddiqui's response, if any, is due **May 8, 2024**. Each party's brief shall not exceed 10 pages. No reply brief will be permitted. If Plaintiff fails to file a brief, summary judgment will be summarily granted for Dr. Siddiqui as to Count 2.

**IT IS SO ORDERED.**

**DATED:** March 8, 2024

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**